COURT OF APPEALS OF VIRGINIA


Present:  Judges Baker, Willis and Overton
Argued at Norfolk, Virginia


TODD MacARTHUR GLASCO
                                        OPINION BY
v.        Record No. 0319-97-1    JUDGE JOSEPH E. BAKER
                                        MARCH 17, 1998
COMMONWEALTH OF VIRGINIA


        FROM THE CIRCUIT COURT OF THE CITY OF NEWPORT NEWS
                    Randolph T. West, Judge

        Edward I. Sarfan (Sarfan & Nachman, on
        brief), for appellant.

        Eugene Murphy, Assistant Attorney General
        (Richard Cullen, Attorney General, on brief),
        for appellee.


     Todd MacArthur Glasco (appellant) appeals from his bench
trial conviction in the Circuit Court of the City of Newport News
(trial court) for possessing cocaine with the intent to
distribute and simultaneously possessing a firearm and cocaine.
On appeal, he contends the trial court erroneously (1) denied his
motion to suppress the evidence, which was based on his assertion
that the initial encounter and the subsequent search of his
automobile incident to arrest violated the Fourth Amendment of
the United States Constitution and (2) held that the evidence was
sufficient to support his convictions.  We disagree and affirm
his convictions.

     Between 11:00 p.m. and 11:10 p.m. on May 4, 1996, while in
uniform and in a police vehicle, Officer Wesley T. Filer saw a
BMW he believed was being driven by appellant.  He had seen

appellant in possession of the BMW on previous occasions. Two weeks earlier, Filer had arrested appellant on an outstanding capias for failure to pay traffic fines. Filer's experience led him to believe that an individual who failed to pay such fines would have his license suspended. Filer began the process of running a check with the Department of Motor Vehicles (DMV) to see whether appellant had a valid license, and he continued to follow the BMW to confirm that appellant was, in fact, the driver.

Without any direction from Filer, appellant stopped and parked legally by the side of the road, exited the vehicle and began to walk across the street. Filer pulled in behind the BMW. At that time, Filer had not yet received a response from the DMV regarding whether appellant's license had been suspended. After appellant exited the vehicle, Filer activated some portion of his emergency equipment and called out, "Mr. Glasco, you don't have a valid license, do you?" Filer did not ask appellant to come back to his vehicle, but appellant began walking toward Filer and responded, "Come on, Filer, can't you just give me a break?" When Filer asked appellant for identification, he produced a Virginia I.D. card but no driver's license. Subsequently, the DMV check confirmed that appellant's driver's license had been suspended, and Filer placed him under custodial arrest.

In a search of appellant's person incident to arrest, Filer

found two small bags of marijuana, $650 in cash,[1] and a pager. Intending to "transport . . . and book" appellant, Filer put him in the back of the police car and asked Officer John V. Polak, a backup officer who had parked behind Filer's vehicle, to search the BMW incident to appellant's arrest. While sitting in his police car, Filer saw Polak raise up from the driver's seat, walk to the rear of the BMW, and motion Filer to come to appellant's vehicle. Polak showed Filer a .38 caliber handgun found in the driver's door pocket wrapped in a towel and "a plastic bag corner" containing suspected crack cocaine found out of sight under the driver's floor mat. Filer testified as follows:

> When [Polak] originally raised up from the driver's seat, I couldn't see what he had in his possession. When he came to the rear of the police unit, I still couldn't see what he had in his possession. . . . Based upon where [appellant] was sitting and when Officer Polak displayed the items to me, [appellant] would have to look actually through my back, through my person in order to see the [gun and cocaine] because they were almost directly in front of me when [Polak] displayed them.

Filer then returned to his car, advised appellant of his Miranda rights, and asked him only about the firearm. Appellant admitted knowing the gun was in the car but said "he didn't know anything about the drugs that we found." When Filer reminded appellant that he had "found the marijuana in [appellant's]

[1]Six hundred of the $650 was in six separate folds of one hundred dollars each, made up of various denominations: four $5 bills; eight $10 bills; fifteen $20 bills; two $50 bills; and one $100 bill.

- 3 -

pocket," appellant responded, "[T]hat's not what I'm talking about. I'm talking about the drugs that are in the vehicle." Filer told appellant that Filer had not mentioned the cocaine, and appellant responded that "he knew Officer Polak had pulled something out of the car because he saw him."

Evidence at trial proved that the cocaine totalled 6.1 grams. No stem was found. Officer Lecroy, who had arrested over two hundred individuals for possessing cocaine, testified that the quantity of cocaine, the absence of a stem for smoking the cocaine, and the presence of a pager, firearm and large quantity of cash folded in hundred dollar increments were facts inconsistent with possession for personal use. He testified that he had, "[o]n several occasions, . . . seen [sellers] in possession of large quantities of cash . . . packaged in hundred dollar increments" and that such packaging was to make it easier to keep track of how much money they had and how much "dope" they had sold. However, he also admitted that a heavy user could smoke a gram a day.

Appellant testified that he saw the police car's lights come on while he was walking across the street and that Filer said "Get over here. I want to see you." Appellant testified that he obeyed Filer's "order" because Filer was a police officer with his flashing lights on.

Georgia Herbert, the registered owner of the BMW, testified that she had given appellant $600 in small denominations under

- 4 -

$100 to pay her bills and that the money was not folded. Appellant claimed that he had changed the money into bigger denominations to make it lighter.

Herbert also testified that she often loaned out her car and that her uncle, Richard Williams, had possessed the car for several hours earlier in the day. She had asked appellant to pick up the car from Williams and return it to her. Appellant also testified at trial that he had picked the car up from Williams.

## MOTION TO SUPPRESS

In reviewing a trial court's denial of a motion to suppress, "[t]he burden is upon [appellant] to show that this ruling, when the evidence is considered most favorably to the Commonwealth, constituted reversible error." Fore v. Commonwealth, 220 Va. 1007, 1010, 265 S.E.2d 729, 731 (1980).

### Terry Stop

Under well established Fourth Amendment principles, "[t]he police can stop and briefly detain a person for investigative purposes if the officer has a reasonable suspicion supported by articulable facts that criminal activity 'may be afoot.'" United States v. Sokolow, 490 U.S. 1, 7 (1989) (quoting Terry v. Ohio, 392 U.S. 1, 30 (1968)). "Ultimate questions of reasonable suspicion and probable cause to make a warrantless search" or seizure involve issues of both law and fact and are reviewed de novo on appeal. See Ornelas v. United States, 116 S. Ct. 1657,

- 5 -

1659 (1996). However, "[i]n performing such analysis, we are bound by the trial court's findings of historical fact unless 'plainly wrong' or without evidence to support them[,] and we give due weight to the inferences drawn from those facts by resident judges and local law enforcement officers." McGee v. Commonwealth, 25 Va. App. 193, 198, 487 S.E.2d 259, 261 (1997) (en banc) (citing Ornelas, 116 S. Ct. at 1663).

We hold that the evidence proved Filer had reasonable suspicion that criminal activity was "afoot." See Sokolow, 490 U.S. at 7. Filer knew appellant had been arrested two weeks earlier for law violations that often resulted in license suspension. Although Filer's suspicion regarding the probable outcome of proceedings against people who fail to pay fines was not conclusive evidence that appellant was driving without a license, it nevertheless gave Filer reasonable suspicion to detain and question appellant briefly. Appellant stopped and parked his car without any direction by Filer. As appellant exited his car and crossed the street, Filer called out a question to him: "Mr. Glasco, you don't have a valid license, do you?" Appellant began to walk toward Filer and said, "Come on, Filer, can't you just give me a break." Appellant's statement, coupled with Filer's knowledge of appellant's recent arrest, gave Filer reasonable suspicion to detain him further. When appellant was unable to produce a valid driver's license, Filer had reasonable suspicion to continue the detention while he awaited

the results of the DMV license check.

<u>Search Incident to Arrest</u>

Searches incident to arrest "'have long been considered valid because of the need "to remove any weapons that [the arrestee] might seek to use in order to resist arrest or effect his escape" and the need to prevent the concealment or destruction of evidence.'" <u>White v. Commonwealth</u>, 24 Va. App. 446, 450, 482 S.E.2d 876, 878 (1997) (quoting <u>New York v. Belton</u>, 453 U.S. 454, 457 (1981) (quoting <u>Chimel v. California</u>, 395 U.S. 752, 763 (1969))).  As we recently reemphasized, "[t]hese principles apply even to searches conducted after the arrestee has been restrained, as long as the search is contemporaneous with the arrest." <u>Archer v. Commonwealth</u>, 26 Va. App. 1, 9-10, 492 S.E.2d 826, 830 (1997) (citing <u>United States v. Silva</u>, 745 F.2d 840, 847 (4th Cir. 1984) (upholding validity of search in motel room of locked zipped bag in possession of accused who had already been handcuffed and was being held at gunpoint)).  In the case of the arrest of an occupant of an automobile, these principles permit the contemporaneous search of the passenger compartment.  <u>See</u> <u>Belton</u>, 453 U.S. 454.

Once Filer received confirmation that appellant did not possess a valid license, he placed appellant under custodial arrest for that offense.  Incident to that valid custodial arrest, Filer had the authority to conduct a contemporaneous warrantless search of appellant and of the immediately

surrounding area.

Appellant contends the authority to search a vehicle incident to arrest does not extend to the vehicle he exited voluntarily and without haste before being detained and arrested. We disagree. See White, 24 Va. App. 446, 482 S.E.2d 876. White involved an individual who, when he "became aware that he was being followed by police," parked his vehicle and fled. See id. at 451, 482 S.E.2d at 878. White was immediately stopped, ordered back to his vehicle, and arrested for driving on a suspended license. The arresting officer conducted a vehicle search contemporaneous with the lawful custodial arrest. See id. at 449, 451, 482 S.E.2d at 877, 878.

In affirming White's conviction, we classified the search of "the vehicle of which [White] had been a 'recent occupant'" as one "indistinguishable from the type of search deemed valid by Belton." White, 24 Va. App. at 451, 482 S.E.2d at 878 (quoting Belton, 453 U.S. at 460) (emphasis added). We emphasized that the "ruling in Belton applies even where the arrestee voluntarily exits the vehicle prior to being arrested." Id. (citing Michigan v. Long, 463 U.S. 1032, 1036 n.1 (1983)). Therefore, the only prerequisites to the lawful search of an automobile incident to arrest are that the search is contemporaneous with the arrest and the arrestee's recent occupancy of the vehicle. As we noted in White, this rule furthers the goal recognized by the United States Supreme Court in Belton:

> "[T]he protection of the Fourth and

> Fourteenth Amendments 'can only be realized
> if the police are acting under a set of rules
> which, in most instances, makes it possible
> to reach a correct determination beforehand
> as to whether an invasion of privacy is
> justified in the interest of law
> enforcement.'"

White, 24 Va. App. at 450, 482 S.E.2d at 878 (quoting Belton, 453
U.S. at 458 (citations omitted)).

For these reasons, we hold that the trial court correctly
denied appellant's motion to suppress.

SUFFICIENCY OF THE EVIDENCE

In reviewing the sufficiency of the evidence, we examine the
record in the light most favorable to the Commonwealth, granting
to it all reasonable inferences fairly deducible therefrom.  See
Martin v. Commonwealth, 4 Va. App. 438, 443, 358 S.E.2d 415, 418
(1987).  The judgment of a trial court will be disturbed only if
plainly wrong or without evidence to support it.  See id.  The
credibility of a witness, the weight accorded the testimony, and
the inferences to be drawn from proved facts are matters to be
determined by the fact finder.  See Long v. Commonwealth, 8 Va.
App. 194, 199, 379 S.E.2d 473, 476 (1989).

Circumstantial evidence may establish the elements of a
crime, provided it excludes every reasonable hypothesis of
innocence.  See, e.g., Tucker v. Commonwealth, 18 Va. App. 141,
143, 442 S.E.2d 419, 420 (1994).  However, "the Commonwealth need
only exclude reasonable hypotheses of innocence that flow from
the evidence, not those that spring from the imagination of the

defendant." <u>Hamilton v. Commonwealth</u>, 16 Va. App. 751, 755, 433 S.E.2d 27, 29 (1993). Whether a hypothesis of innocence is reasonable is a question of fact, <u>see</u> <u>Cantrell v. Commonwealth</u>, 7 Va. App. 269, 290, 373 S.E.2d 328, 339 (1988), and a finding by the trial court is binding on appeal unless plainly wrong. <u>See</u> <u>Martin</u>, 4 Va. App. at 443, 358 S.E.2d at 418.

## Constructive Possession of the Cocaine

To support a conviction based upon constructive possession of drugs, "the Commonwealth must point to evidence of acts, statements or conduct of the accused or other facts or circumstances which tend to show that the defendant was aware of both the presence and character of the substance and that it was subject to his dominion and control." Powers v. Commonwealth, 227 Va. 474, 476, 316 S.E.2d 739, 740 (1984). Although mere proximity to drugs is insufficient to establish possession, it is a circumstance which may be probative in determining whether an accused possessed such drugs. See Brown v. Commonwealth, 15 Va. App. 1, 9, 421 S.E.2d 877, 882 (1992) (en banc). Ownership or occupancy of the vehicle in which the drugs are found is likewise a circumstance probative of possession. See Drew v. Commonwealth, 230 Va. 471, 473, 338 S.E.2d 844, 845 (1986) (citing Code § 18.2-250). In resolving this issue, the court must consider "the totality of the circumstances disclosed by the evidence." Womack v. Commonwealth, 220 Va. 5, 8, 255 S.E.2d 351, 353 (1979).

Here, Polak found the cocaine under the floor mat of the BMW appellant had been driving only minutes before. Although the car was not registered to appellant, Filer had also seen appellant driving it on previous occasions. Polak found an item in the car door pocket, a firearm, that appellant admitted was his. Finally, appellant told Filer that "he didn't know anything about

the drugs that [Polak] found."  Although appellant claimed he knew about the drugs because he saw Polak pull them out of the vehicle, the only reasonable inference from Filer's testimony, viewed in the light most favorable to the Commonwealth, was that appellant could not have seen the baggie or its contents before he claimed not to know anything about it.  From the totality of these circumstances, we hold the only reasonable hypothesis flowing from the evidence is that appellant was aware of the presence and character of the cocaine while he was driving the BMW and that it was subject to his dominion and control.

## Intent to Distribute

"Because direct proof of intent [to distribute drugs] is often impossible, it must be shown by circumstantial evidence." Servis v. Commonwealth, 6 Va. App. 507, 524, 371 S.E.2d 156, 165 (1988).  Such evidence may include the quantity of drugs and cash possessed and whether appellant himself used drugs.  See Poindexter v.Commonwealth, 16 Va. App. 730, 734-35, 432 S.E.2d 527, 530 (1993).  Possession of a large sum of money, especially in small denominations, and the absence of any paraphernalia suggestive of personal use, also are regularly recognized as factors indicating an intent to distribute.  See Colbert v. Commonwealth, 219 Va. 1, 4, 244 S.E.2d 748, 748-49 (1978). Finally, pagers and firearms are recognized as tools of the drug trade, the possession of which are probative of intent to distribute.  See White, 24 Va. App. at 453, 482 S.E.2d at 879

- 12 -

(pager); <u>Dixon v. Commonwealth</u>, 11 Va. App. 554, 557, 399 S.E.2d 831, 833 (1991) (firearm).

Here, the officers found 6.1 grams of cocaine but no stem or other paraphernalia indicating personal use. In appellant's pocket, they found $650, the majority of which comprised denominations of $20 and below, and $600 of the money was arranged in six separate folds of $100 each. Also in appellant's pocket, they found two small bags of marijuana and a pager. Finally, in the car just inches from the cocaine, the officers found appellant's .38 caliber handgun.

At trial, Lecroy, experienced in cocaine arrests, confirmed that the quantity of cocaine, the absence of a stem for smoking it, and the presence of a pager, firearm and large quantity of cash folded in hundred dollar increments were facts inconsistent with possession for personal use. Although he admitted that a heavy user could smoke a gram of cocaine a day, making the 6.1 grams a six-day supply, no evidence in the record indicated that appellant used cocaine. In addition, although appellant presented evidence that a friend had given him most of the money in order to pay her bills, the trial court was free to reject this testimony as incredible. Therefore, we cannot say the trial court was plainly wrong in finding that no reasonable hypothesis of innocence flowed from the evidence.

For these reasons, we hold the evidence was sufficient to support appellant's conviction for possessing cocaine with the

intent to distribute, and we affirm both that conviction and his conviction for possessing a firearm while possessing cocaine.

<u>Affirmed.</u>