COURT OF APPEALS OF VIRGINIA


Present:  Judges Bumgardner, Humphreys and Clements
Argued at Richmond, Virginia


HERMAN RODNEY JACKSON
                                    MEMORANDUM OPINION* BY
v.    Record No. 2823-99-4          JUDGE ROBERT J. HUMPHREYS
                                        NOVEMBER 14, 2000
COMMONWEALTH OF VIRGINIA


          FROM THE CIRCUIT COURT OF THE CITY OF ALEXANDRIA
               Wiley R. Wright, Jr., Judge Designate

            Kevin T. Gaynor, Assistant Public Defender,
            for appellant.

            Shelly R. James, Assistant Attorney General
            (Mark L. Earley, Attorney General, on brief),
            for appellee.


     Herman Rodney Jackson appeals his conviction, after a bench

trial, for possession of cocaine with intent to distribute, in

violation of Code § 18.2-248.  Specifically, Jackson argues that

the evidence was insufficient to support the conviction.

     "Where the sufficiency of the evidence is challenged after

conviction, it is our duty to consider it in the light most

favorable to the Commonwealth and give it all reasonable

inferences fairly deducible therefrom.  We should affirm the

judgment unless it appears from the evidence that the judgment

is plainly wrong or without evidence to support it.  Code

     * Pursuant to Code § 17.1-413, this opinion is not
designated for publication.

§ 8-491." Higginbotham v. Commonwealth, 216 Va. 349, 352, 218 S.E.2d 534, 537 (1975).

"In order to convict a person of illegal possession of an illicit drug, the Commonwealth must prove beyond a reasonable doubt that the accused was aware of the presence and character of the drug and that the accused consciously possessed it." Walton v. Commonwealth, 255 Va. 422, 426, 497 S.E.2d 869, 871 (1998). "[P]roof of actual possession, [however,] is not required; proof of constructive possession will suffice. Constructive possession may be established when there are acts, statements, or conduct of the accused or other facts or circumstances which tend to show that the [accused] was aware of both the presence and character of the substance and that it was subject to his dominion and control." Id. at 426, 497 S.E.2d at 872.

Here, Jackson was a passenger in a black Volkswagen which was pulled over in response to a radio dispatch stating that the passengers in the Volkswagen had been observed smoking marijuana. The Volkswagen was stopped and blocked in, from the front and back, by two Alexandria Police Department squad cars. Investigator Jesse Meekins immediately removed Jackson from the passenger side of the Volkswagen while the other three officers dealt with the remaining three passengers.

Meekins took Jackson by the hands, pulled him out of the car, and led him to the rear of his squad car, which was parked

-

behind the Volkswagen.  Meekins handcuffed Jackson and attempted to search him.  However, Jackson struggled and moved around, requiring Meekins to repeatedly order him to stop moving. Officer Meekins lost sight of Jackson's hands for a brief moment and noticed that Jackson was "messing with [the] waistline" to his pants.  Meekins continued the search and observed that Jackson was wearing two pairs of sweatpants.  From them, he recovered a pipe and $103.00, which was made up of five twenty-dollar bills and three one-dollar bills.

A few moments later, Officer George approached the two to see what the struggle was about.  When he did this, he saw "a piece of clear plastic that was cylindrical and appeared to have numerous rock-like objects in it that was sitting directly behind the right rear tire of [Meekins'] vehicle[,] and about a foot in front of [Jackson's] feet."  Although the package was directly behind the tire of Meekins' squad car, it showed no signs of having been run over by the tire.  Furthermore, no one other than Meekins and Jackson had been standing in that area since the squad car had stopped behind the Volkswagen.

Officer George testified that the package contained "12 individually wrapped rocks of crack cocaine."  After Officer George was established as an expert in the sale and distribution of drugs, he testified that each rock sold on the street for approximately $20, yielding a total street value of $240.00.  He testified that the quantity and packaging of the cocaine was

-

inconsistent with personal use. Officer George also testified that, in response to Meekins' question asking Jackson if he was a narcotics user, Jackson said "no", then "said 'I s[m]oke marijuana.'"

Meekins testified that, while interviewing Jackson, he had placed the recovered package of crack cocaine on the table and asked Jackson, "You're not going to sell this while your brother was in the car [sic]?" Jackson replied "No." Keeping his hand on the package, Meekins then said, "This was for later, right?". Jackson replied, "Yeah." Jackson then stated, "No, I don't know where that came from . . . I plead the fifth."

"Although mere proximity to drugs is insufficient to establish possession, it is a circumstance which may be probative in determining whether an accused possessed such drugs. " Glasco v. Commonwealth, 26 Va. App. 763, 774, 497 S.E.2d 150, 155 (1998) (citing Womack v. Commonwealth, 220 Va. 5, 8, 255 S.E.2d 351, 353 (1979)), aff'd, 257 Va. 433, 513 S.E.2d 137 (1999).

In the present case, the "totality of the circumstances" demonstrates that it was reasonable to conclude the drugs came from Jackson's person. First, Jackson admitted that he knew about the drugs, before retracting his statement. In addition, there is simply no other plausible explanation to establish how the drugs came to rest behind the rear tire of the squad car and directly in front of Jackson's feet, other than to conclude that

-

the drugs came from Jackson's person.  See Johnson v. Commonwealth, 12 Va. App. 150, 153, 402 S.E.2d 502, 504 (1991)(where drugs were found in a relatively private area at the very point where a chase initiated, and appellant made a voluntary acknowledgment that the object found was a "bag of drugs", the finder of fact could infer that the appellant had sufficient familiarity with what was on the ground to infer that he had it in his possession).

It is well settled that "[c]ircumstantial evidence may establish the elements of a crime, provided it excludes every reasonable hypothesis of innocence.  However, the Commonwealth need only exclude reasonable hypotheses of innocence that flow from the evidence, not those that spring from the imagination of the defendant.  Whether a hypothesis of innocence is reasonable is a question of fact, and a finding by the trial court is binding on appeal unless plainly wrong."  Glasco at 773-774, 497 S.E.2d at 155.

Considering the evidence in the light most favorable to the Commonwealth, we cannot hold that the trial court's conclusion that Jackson constructively possessed the crack cocaine was "plainly wrong".

Finally, "[p]ossession with intent to distribute is a crime which requires an act coupled with a specific intent. [However,] [b]ecause direct proof of intent is often impossible to produce, it may, and frequently must, be shown by

-

circumstantial evidence."  Barlow v. Commonwealth, 26 Va. App.
421, 429-430, 494 S.E.2d 901, 905 (1998)(citations omitted).

"In proving intent, various types of circumstantial
evidence may be appropriate -- evidence concerning the quantity
of drugs and cash possessed, the method of packaging, . . .
whether appellant himself used drugs, and the absence of
evidence suggestive of personal use."  See Poindexter v.
Commonwealth, 16 Va. App. 730, 734-735, 432 S.E.2d 527, 530
(1993); Colbert v. Commonwealth, 219 Va. 1, 4, 244 S.E.2d 748,
749 (1978).

Here, Jackson possessed a quantity of drugs that Officer
George testified was inconsistent with personal use.  The drugs
were individually packaged, and Jackson had five twenty-dollar
bills on his person.  In addition, Jackson told Officer Meekins
that he didn't do cocaine, but admitted he smoked marijuana.
This admission was supported by the marijuana pipe which was
found on his person.  Finally, Jackson effectively admitted to
Officer Meekins that he intended to sell the cocaine "later,"
and then later retracted his statement.

Based on this evidence, we hold that the trial court could
conclude beyond a reasonable doubt that Jackson intended to
distribute the crack cocaine.

Affirmed.

-