COURT OF APPEALS OF VIRGINIA


Present:  Judges Beales, Alston and Senior Judge Annunziata
Argued at Alexandria, Virginia


KEITH RENDELL COLBERT

                                                      MEMORANDUM OPINION[*] BY
v.        Record No. 0496-09-4               JUDGE ROSEMARIE ANNUNZIATA
                                                      FEBRUARY 9, 2010
COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF FAIRFAX COUNTY
Randy I. Bellows, Judge

    Kate A. Garretson (The Garretson Law Firm, P.C., on brief), for
    appellant.

    John W. Blanton, Assistant Attorney General (William C. Mims,
    Attorney General, on brief), for appellee.


        Appellant was convicted of possession of cocaine with the intent to distribute.  On

appeal, he maintains the evidence was insufficient to support his conviction because it failed to

prove he possessed cocaine.[1]  We disagree and affirm the conviction.

                                              Background

        "On appeal, 'we review the evidence in the light most favorable to the Commonwealth,

granting to it all reasonable inferences fairly deducible therefrom.'"  Archer v. Commonwealth,

26 Va. App. 1, 11, 492 S.E.2d 826, 831 (1997) (quoting Martin v. Commonwealth, 4 Va. App.

438, 443, 358 S.E.2d 415, 418 (1987)).

---

        [*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

        [1] Whether the evidence was insufficient to prove appellant's intent to distribute is not
before us, as that issue was procedurally defaulted pursuant to Rule 5A:18.

On February 21, 2008, Officer Robin Wyatt drove his unmarked police car into the parking lot of a mall and noticed a car parked approximately twenty spaces away from the other cars. The driver and the front seat passenger were inside the car. Wyatt continued his observation for a period of time and grew suspicious when no one exited the vehicle. Finally, the passenger stepped out of the car, and as he was walking away, the driver called him back.

Wyatt, dressed in police uniform, walked toward the passenger. The passenger had almost reached the car when the driver and passenger noticed Wyatt's approach. The passenger, Ron Reynolds, was unsteady on his feet and appeared intoxicated. As Wyatt drew closer, he smelled no alcohol on Reynolds but, as Wyatt spoke with Reynolds, he concluded Reynolds was under the influence of "some narcotic."

Reynolds placed his left hand in his pocket and turned away from Wyatt. Despite Wyatt's repeated commands to Reynolds to remove his hand, Reynolds continued to place his left hand in his pocket. When Wyatt escorted Reynolds to the car, the driver "started getting very defensive . . . [t]elling me, why was I bothering them . . . harassing them." Wyatt testified appellant "was moving around in the driver's seat . . . . [I]t appeared that he was moving stuff in the vehicle or hiding something in the vehicle." Wyatt instructed appellant to stop moving and to place his hands in his lap, commands that appellant ignored. Appellant continued moving, telling Wyatt he was harassing them. Wyatt called for backup assistance.

When other officers arrived, Wyatt patted down Reynolds and recovered two baggies containing marijuana, one baggie containing cocaine, and two glass tubes which appeared to be crack pipes. Wyatt and the other officers also searched the area outside the car. On the passenger side near where Reynolds and Wyatt had been standing, an officer found another baggie of cocaine on the ground.

After asking appellant to exit the car, Wyatt searched him and found approximately $1,000 cash, primarily in $20 denominations. Suspicious that appellant had hidden something in the car, Wyatt opened the driver's door and "did a quick search of the driver's area." As he did so, Wyatt noticed a duffel bag in the center of the backseat. A Tupperware container was protruding from the unzipped bag, and a CD case was next to it. With his flashlight Wyatt could see razor blades, scissors, and pill bottles inside the Tupperware container. The CD case contained a digital scale bearing cocaine residue. Appellant's wallet, containing $700 cash, was recovered from the center console.

After the police removed the duffel bag and Tupperware container, a drug dog searched the vehicle. The drug dog, trained to alert at the smell of marijuana, cocaine, crack, heroin, methamphetamine, ecstasy, and "MDMA," circled the car and alerted to the driver's door. An officer opened the car door and allowed the dog to search the interior. The dog alerted to the driver's seat area, specifically the carpeted area beneath the seat. When the officers searched the car, they found marijuana residue beneath the driver's seat.

At trial, Detective Michael Riccio testified as an expert on drug distribution and packaging. In Riccio's opinion, the bags of cocaine recovered from the scene had a "street value" of approximately $20 per bag. Riccio also stated that in the CD case found in appellant's car was a digital scale used to weigh drugs and that scissors such as those found in the Tupperware container were used to cut plastic baggies to package the cocaine. Riccio explained that drug dealers who possessed a "higher quality" of cocaine in "chunk form" divided it with a razor blade. After cutting the cocaine, a dealer would measure the amount to be sold by weighing it on a digital scale such as the one recovered from appellant's car. Riccio noted that, in arresting drug dealers, "You might catch them with a little product and little cash or a lot of cash and [a] little product."

- 3 -

Appellant acknowledged he owned the vehicle in which the duffel bag was found, but denied the duffel bag was his and denied knowledge of the items recovered by police from the backseat. Appellant stated that his girlfriend had driven his car earlier in the day, but he did not recall seeing anything on the backseat when she turned the car over to him. He also testified that, when he picked up Reynolds, Reynolds "had a couple of things with him," but that he did not see Reynolds place anything on the backseat when he opened the back door before getting into the front passenger seat. When asked if there was anything other than the duffel bag in the backseat at the time of his arrest, appellant answered, "That's what the officer said." Appellant denied moving his hands around during his encounter with Wyatt and denied turning around so that he could see the duffel bag. He stated he kept his hands on the steering wheel while Wyatt asked him repeatedly, "What are you doing?" Appellant explained that his grandmother had given him $1,200 in cash to help him pay his bills because he was unemployed.

Appellant's girlfriend, Emma Tyrell, denied that a duffel bag was in the car when she turned the car over to appellant. However, she acknowledged that she and appellant had left an empty Tupperware container in the back of the car. Tyrell identified the Tupperware container found by police on top of the duffel bag as the one she and appellant had used to take soup to his cousin's house.

### Analysis

"To establish possession of a controlled substance, it generally is necessary to show that the defendant was aware of the presence and character of the particular substance and was intentionally and consciously in possession of it." Gillis v. Commonwealth, 215 Va. 298, 301, 208 S.E.2d 768, 771 (1974). However, "suspicion or even probability of guilt is not sufficient. There must be an unbroken chain of circumstances 'proving the guilt of the accused to the exclusion of any other rational hypothesis and to a moral certainty.'" Gordon v. Commonwealth,

212 Va. 298, 300, 183 S.E.2d 735, 736 (1971) (quoting Brown v. Commonwealth, 211 Va. 252, 255, 176 S.E.2d 813, 815 (1970)).

"Constructive 'possession may be proved by evidence of acts, declarations or conduct of the accused from which the inference may be fairly drawn that he knew of the existence of narcotics at the place where they were found.'" Hardy v. Commonwealth, 17 Va. App. 677, 682, 440 S.E.2d 434, 437 (1994) (quoting Andrews v. Commonwealth, 216 Va. 179, 182, 217 S.E.2d 812, 814 (1975)). Moreover, the substance in question must be "'subject to his dominion and control.'" Glasco v. Commonwealth, 26 Va. App. 763, 774, 497 S.E.2d 150, 155 (1998) (quoting Powers v. Commonwealth, 227 Va. 474, 476, 316 S.E.2d 739, 740 (1984)). "In resolving this issue, the court must consider 'the totality of the circumstances disclosed by the evidence.'" Id. (quoting Womack v. Commonwealth, 220 Va. 5, 8, 255 S.E.2d 351, 353 (1979)).

> Circumstantial evidence may establish the elements of a crime, provided it excludes every reasonable hypothesis of innocence. "The statement that circumstantial evidence must exclude every reasonable theory of innocence is simply another way of stating that the Commonwealth has the burden of proof beyond a reasonable doubt." Commonwealth v. Hudson, 265 Va. 505, 513, 578 S.E.2d 781, 785 (2003). This Court must determine not whether there is some evidence to support [appellant's] hypothesis of innocence but, rather, whether a reasonable fact finder, upon consideration of all the evidence, could have rejected appellant's theories and found him guilty beyond a reasonable doubt. Whether a hypothesis of innocence is reasonable is a question of fact.

Corbin v. Commonwealth, 44 Va. App. 196, 202-03, 604 S.E.2d 111, 114 (2004) (some citations omitted).

We cannot say that the fact finder's rejection of appellant's hypothesis of innocence was unreasonable. Examining the "totality of the circumstances," the fact finder could reasonably conclude that appellant was aware of the cocaine residue on the scale and that it was subject to his dominion and control.

"Although mere proximity to drugs is insufficient to establish possession, it is a circumstance which may be probative in determining whether an accused possessed such drugs." Glasco, 26 Va. App. at 774, 497 S.E.2d at 155. And, while "[o]ccupancy of a vehicle where [contraband is] found is insufficient, standing alone, to support an inference of possession, . . . it is a circumstance which the fact finder may consider along with other evidence when determining whether a person knowingly possessed drugs." Hardy, 17 Va. App. at 682, 440 S.E.2d at 437 (citations omitted). Here, the CD case in which the cocaine was found was in appellant's car, within appellant's reach immediately next to appellant's Tupperware container, and was in open view. While appellant denied the duffel bag and the items on top of it were his, the fact finder was not compelled to accept his testimony. His girlfriend directly contradicted him, identifying the Tupperware container in which distribution paraphernalia was found as one she and appellant had used and noting that she had placed the empty container in the backseat earlier that day. The Tupperware container, the paraphernalia inside, and the CD case containing the cocaine residue were visible from the driver's seat. Furthermore, contrary to the suggestion that the duffel bag belonged to his passenger, Reynolds left the car without the duffel bag. The fact finder was entitled to infer that Reynolds took his belongings with him and that he left the bag in the car because it did not belong to him.

The evidence further shows that, when a uniformed officer approached, appellant responded by moving about in the car. To the officer, appellant appeared to be "moving . . . or hiding stuff in the vehicle." Appellant continued this furtive movement despite Wyatt's orders to keep his hands on the steering wheel. While not conclusive, such furtive behavior was indicative of appellant's guilty state of mind. See Washington v. Commonwealth, 29 Va. App. 5, 13, 509 S.E.2d 512, 516 (1999) ("Deliberately furtive actions and flight at the approach of strangers or law officers are strong indicia of *mens rea*[.]"). Moreover, from the evidence of the dog's alert to the driver's side

of the vehicle, the fact finder could reasonably infer that appellant had handled the drugs and was aware of the nature and presence of the cocaine in the vehicle.

Finally, the fact finder was not required to accept appellant's explanation for the unusually large amount of cash in his possession at the time the cocaine was found. See Marable v. Commonwealth, 27 Va. App. 505, 509-10, 500 S.E.2d 233, 235 (1998). Rather, the fact finder could rationally conclude that the cash, mostly in denominations consistent with cocaine distribution, was an additional factor tending to prove appellant was aware of the cocaine residue on the scale and that it was subject to his dominion and control.[2]

The evidence, when viewed as a whole, was sufficient to establish beyond a reasonable doubt that appellant possessed the cocaine.

Affirmed.

---

[2] Appellant relies on the Virginia Supreme Court's decision in Powers in support of his argument that the evidence was insufficient to establish his guilt beyond a reasonable doubt. His reliance is misplaced. In Powers the Supreme Court of Virginia overturned the defendant's conviction because the *only* evidence of his awareness of the nature and presence of the drugs was his occupancy of the premises. Powers, 227 Va. at 475, 316 S.E.2d at 740 ("Proof that the LSD was found in premises or a vehicle owned or occupied by the defendant is insufficient, *standing alone*, to prove constructive possession. Code § 18.2-250." (emphasis added)).