## Richmond

WELFORD GORDON, JR. v. COMMONWEALTH OF VIRGINIA.

October 11, 1971.

Record No. 7762.

Present, All the Justices.

*J. Patrick Keith* (*Paul & Smith*, on brief), for plaintiff in error.

*James E. Kulp, Assistant Attorney General* (*Andrew P. Miller, Attorney General*, on brief), for defendant in error.

COCHRAN, J., delivered the opinion of the court.

The trial court, sitting without a jury, convicted Welford Gordon, Jr. of possession of heroin, a narcotic drug, in violation of Code § 54-488. From the judgment order sentencing him to serve three years in the penitentiary and to pay a fine of $100.00, we granted Gordon a writ of error.

The question for determination is whether the evidence was sufficient to sustain the conviction.

The evidence shows that on December 15, 1969, at approximately 2:15 p.m., Detective Harding was driving east on Leigh Street approaching Third Street in the City of Richmond when he observed

Gordon walking east on the north side of Leigh Street. As Harding drew even with him, Gordon stepped between two bushes "and a concrete type fence and pulled out a brownish color, manila color envelope." When he stepped back, Gordon saw the detective, raised his hand, said "Hi, Harding" and began to walk west on Leigh Street with the envelope in his hand.

As Detective Harding made a U-turn in the intersection of Third and Leigh Streets, Gordon looked back at him and began running. He ran across the intersection of Second and Leigh Streets and south on Second, followed by Harding driving the wrong way down the one-way street. Harding stopped his car part way through the block and continued the pursuit on foot as Gordon darted to the east through an alleyway and then turned south again.

Harding was approximately 15 yards behind Gordon but narrowed the distance to five to seven yards when Gordon's flight was slowed by a closed gate at the rear of doctors' offices at Number 206 East Clay Street. When Gordon used both hands to open the gate Harding saw that he was still carrying the envelope. For three or four seconds thereafter Harding lost sight of Gordon as they ran along a passageway between the doctors' offices and around a brick wall standing in the center of the passageway at the front of the offices.

Emerging from the entrance, Harding saw Gordon running east along Clay Street but no longer saw the envelope. The detective followed Gordon across the intersection of Clay and Third Streets, and north on Third. He again momentarily lost sight of Gordon when the latter disappeared around the corner of a building but soon found him hiding behind a doghouse. Harding arrested Gordon, and, after searching the surrounding area unsuccessfully for the envelope, took him back to the police car on Second Street.

Harding introduced into evidence and testified from photographs which he had taken showing Gordon's route from the sidewalk on Leigh Street where he first saw Gordon to the doghouse where the pursuit ended. Harding testified that during the chase he had called to Gordon to halt and had fired a warning shot into the air but that Gordon continued to flee. He conceded that he did not see Gordon dispose of the envelope.

Detective Vann testified that he had been walking east in the two hundred block of East Clay Street when he received information that the police were chasing someone in the block. After delivering a message in a nearby building Vann returned to the street and, pur-

suant to information reported to him, observed an envelope lying on the grass behind the perforated wall extending in front of the doctors' offices east of the entrance to Number 206 East Clay Street. He acknowledged that Clay Street was a "fairly busy" street and that he did not know how the envelope happened to be where he found it. Vann testified that after a lady unlocked a gate, he entered the enclosure behind the wall, picked up the envelope and shortly thereafter delivered it to Detective Harding.

Harding testified that this envelope, "a pay envelope with Central National Bank on the front of it", was the "same color, size and shape" as the envelope which he had seen Gordon pick up on Leigh Street.

The envelope delivered to Harding was found to contain "narcotics works", consisting of a syringe, a needle, a bottle cap known as a "cooker", and a stocking. The bottle cap, upon analysis, responded positively to the qualitative test for heroin. The envelope and its contents were introduced in evidence by the Commonwealth.

Harding testified that Gordon, after having been taken to police headquarters and advised of his constitutional rights, stated that it was a white envelope that he had picked up "and you done picked up somebody else's works and you're trying to put them on me." Gordon did not testify at the trial and adduced no evidence in his behalf.

Gordon contends that the Commonwealth did not prove beyond a reasonable doubt that he had in his possession the envelope containing heroin found by Detective Vann. We agree.

While a conviction may properly be based upon circumstantial evidence, suspicion or even probability of guilt is not sufficient. There must be an unbroken chain of circumstances "proving the guilt of the accused to the 'exclusion of any other rational hypothesis and to a moral certainty.'" *Brown* v. *Commonwealth*, 211 Va. 252, 255, 176 S.E.2d 813, 815 (1970).

Numerous decisions have affirmed convictions for possession of narcotic drugs resting on proof that a defendant was observed dropping or throwing away an identifiable object which, when subsequently recovered, was found to contain narcotics. *E.g.*, *State* v. *Small*, 423 S.W.2d 750 (Mo. 1968); *Foy* v. *State*, 84 Nev. 76, 436 P.2d 811 (1968); *State* v. *Garcia*, 76 N.M. 171, 413 P.2d 210 (1966). *See* Annot., 91 A.L.R.2d 810.

Here, there was a break in the chain of evidence. No witness was produced who saw Gordon dispose of the manila envelope which he

carried. The envelope containing narcotics "works" was found by Detective Vann on a grass plot separated only by a perforated wall from the public street on which numerous persons were gathered. This case is distinguishable from *Robbs* v. *Commonwealth*, 211 Va. 153, 176 S.E.2d 429 (1970), relied upon by the Commonwealth, where possession was clearly established by evidence that a narcotic drug was found in a housecoat belonging to the defendant, which was lying on her bed in her apartment.

In *State* v. *Chavis*, 270 N.C. 306, 154 S.E.2d 340 (1967), a conviction for possession of narcotics was reversed because of a break in the chain of circumstantial evidence similar to that in the present case. There, Chavis, wearing a hat, walked past two police officers and met a man with whom he talked for about 30 seconds. He then walked back toward the officers who had been following him and keeping him under observation at all times except for two or three seconds. The officers arrested and searched him but, finding no narcotics, released him. At this time Chavis wore no hat. About 20 minutes later the officers found the hat, which they positively identified, in high grass four or five feet from the point where Chavis and his companion had been talking. In and around the hat narcotics were discovered. The court found the circumstantial evidence of possession insufficient to sustain the conviction. *Accord, People* v. *Jackson*, 23 Ill. 2d 360, 178 N.E.2d 320 (1961); *People* v. *Evans*, 72 Ill. App. 2d 146, 218 N.E.2d 781 (1966). *See Crisman* v. *Commonwealth*, 197 Va. 17, 21, 87 S.E.2d 796, 799 (1955).

Because of the fatal gap in the circumstantial evidence adduced against Gordon, his conviction will be reversed and the case remanded for a new trial if the Commonwealth be so advised.

*Reversed and remanded.*