COURT OF APPEALS OF VIRGINIA


Present: Judges Benton, Annunziata and Humphreys
Argued at Richmond, Virginia


AVERY ELTON TAYLOR, JR.

MEMORANDUM OPINION[*] BY
v.    Record No. 0880-01-2          JUDGE ROBERT J. HUMPHREYS
                                        JULY 30, 2002
COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF THE CITY OF PETERSBURG
Oliver A. Pollard, Jr., Judge

Joseph A. Sadighian (Office of the Public
Defender, on brief), for appellant.

Jennifer R. Franklin, Assistant Attorney
General (Randolph A. Beales, Attorney
General, on brief), for appellee.


Avery Elton Taylor, Jr. appeals his convictions, after a

bench trial, for possession of cocaine with the intent to

distribute in violation of Code § 18.2-248, and possession of a

firearm while simultaneously possessing a controlled substance in

violation of Code § 18.2-308.4(A). Taylor contends the trial

judge erred in (1) denying his motion to suppress the evidence

discovered after a seizure of his automobile and (2) denying his

motion to strike the evidence for insufficiency. For the reasons

that follow, we affirm his convictions.

---

* Pursuant to Code § 17.1-413, this opinion is not
designated for publication.

I.

At a pretrial hearing on Taylor's motion to suppress, the evidence proved that at 9:45 p.m. on June 29, 2000, Officer Gilstrap, Officer Kendall, and Officer Jennings of the Petersburg Police Department went to a hotel to investigate a report of persons having drugs and weapons in two hotel rooms. Officer Kendall testified that they were dispatched to Room 131. Officer Jennings testified that they also had been given Taylor's name by their dispatcher.

According to Officer Gilstrap, he and the other officers arrived at the hotel around the same time but in separate cars. Officer Gilstrap testified that the hotel property was fenced with two points of entry and that he parked his car so as not to impede traffic into or out of the property. Officer Gilstrap saw the car he knew was used by Taylor and parked behind it but "not in such a way to effectively block his egress." He testified that he parked "[m]aybe 30 degrees from the center" of Taylor's car "in such a way to be out of the way" and walked to the center of the parking lot to confer with the other officers. Officer Gilstrap then approached the driver side of the car; Officer Kendall approached the passenger side; and Officer "Jennings took a wider stance away from Officer Kendall on the passenger side for safety sake."

After seeing a person in the driver's seat whom he did not recognize, Officer Gilstrap asked him, "what room are you coming from?" Officer Gilstrap "asked [the driver] if he would mind

-

stepping from the car and speaking to me for a moment."  He testified the driver agreed to do so.  Officer Gilstrap then "requested a consent search . . . and asked him if he had any weapons on his person."  After the driver said he had no weapons, Officer Gilstrap searched him.  He found no drugs, weapons, or contraband on the driver.

Officer Kendall testified that, when he arrived, Officer Gilstrap was making contact with the driver of the vehicle.  He stated that he had dogs in his vehicle and parked close to the hotel's office because he did not want the suspects to hear the dogs barking.  According to Officer Kendall, the driver and Officer Gilstrap were standing to the rear of the car as he approached.  Officer Kendall testified that as he approached the passenger side of the car, "Taylor leaned out the window, looked at [him] and asked . . . what was going on."  Officer Kendall told Taylor they had been dispatched to the hotel and asked Taylor to identify the room he had visited.  When Taylor said Room 131, Officer Kendall told Taylor they had come to investigate that room for illegal narcotics and weapons.  He asked whether Taylor had any weapons.  When Taylor said he did not, Officer Kendall asked whether Taylor would mind if he frisked Taylor for weapons and checked the vehicle.  He testified that Taylor said "no, he did not mind . . . and actually handed [the officer] the keys to the vehicle and said [the officer] could start with the trunk."

-

When Officer Jennings approached, Officer Kendall told Taylor he first wanted to check Taylor for weapons. Officer Kendall testified that Taylor then "took off running."

Timothy Dunbar, the driver of the vehicle, testified that he went to the hotel to "hang out" with Taylor and that later Taylor asked if he would drive his car home. Dunbar testified he tried to put the car in reverse and saw four officers behind him. He stopped and just sat there. Dunbar testified that the officers approached the car and asked if the car was his. When he said it was not, they asked him to get out of the car. At that point, Taylor was asking "why they were pulling us over."

At the conclusion of the evidence, Taylor's counsel argued that neither Taylor nor the driver was free to leave when the three police officers were approaching Taylor's vehicle. Taylor's counsel argued, therefore, that the encounter amounted to an unlawful seizure and any evidence discovered was the result of an unlawful detention. In response, the prosecutor argued that "this was a consensual encounter, there was no seizure, [Taylor] did not submit to a show of authority, [and] the officers did not . . . block the car . . . in any way." The trial judge denied the motion to suppress concluding that the motion was "without merit."

At trial, Officer Gilstrap testified that, while he was talking with the driver, he saw Taylor run past him. Officer Kendall was in pursuit. Officer Gilstrap then "pushed [the

-

driver] on the ground for safety sake and turned and ran after Mr. Taylor as well."

Officer Osman, an off-duty police officer who was there to meet Officer Kendall, was closer to Taylor's flight path. Officer Osman pursued Taylor across Little Church Street as Taylor ran toward Washington Street. He caught Taylor in the parking lot behind a commercial business and leaped onto Taylor's back. Officer Kendall and Officer Gilstrap also leaped onto Taylor. When Taylor fell, one of the officers heard a piece of metal hit the asphalt. A fierce struggle ensued. Officer Gilstrap ultimately had to spray Taylor with a chemical to subdue him. The officers then pried Taylor's hand from underneath his stomach area and placed Taylor in handcuffs. Officer Osman testified that when they lifted Taylor, he "observed a pistol stuffed in [Taylor's] pants exactly where his hands were."

The officers led Taylor from behind the building and across Little Church Street. While the officers were escorting Taylor toward the police vehicle, Officer Gilstrap saw a large package in the middle of the street. The package contained two smaller bundles of crack cocaine and a larger bundle, which held several one inch by one inch clear and purple translucent plastic bags containing crack cocaine and two bags of powder cocaine.

Later, when searching Taylor, Officer Gilstrap found in Taylor's pocket empty bags, which he described as looking like the bags containing cocaine. He testified that the bags, which were

-

called "zips," were small and clear with a purplish tint.  Taylor also had a razor blade with an unidentified substance on it, a key to Room 131, a pager, and $106 in denominations of five $10 bills, ten $5 bills, and six $1 bills.  In Taylor's car, the officers found a second pager and "a couple of cell phones."

The officers testified that the drugs were found "in the middle of Little Church Street," only 50-60 feet away from the location where officers struggled with Taylor, and directly on Taylor's flight path.  Officer Gilstrap testified that he knew the drugs "had not been in the middle of the street when [he] made his entrance onto the hotel property."  Officer Osman testified that as he was chasing Taylor, he had observed, "the whole time he was running, his hands were in front of him . . . like he was digging in his pants. . . . I don't know if he was digging in his pants. I couldn't see the front of him.  I could see the motion like he was doing that."  Moreover, Osman testified, "right after we detained [Taylor] . . . we started walking back. . . . We walked the exact path," and found the drugs in the street.

Officer Gilstrap stated that during the incident, "[t]here were a few [people in the area], most were standing on the property away from us.  They were watching.  There were a few people up the street on Little Church Street watching."  When asked whether he observed other people on Little Church Street, Officer Kendall testified, "Like I said, during the struggle, I didn't see anybody over that way.  I didn't notice anybody over

-

that way. If there was, I would have notice [sic] while we were struggling. . . . The only people I saw were coming off East Washington Street as we were coming from behind the corner of the building." Finally, Osman stated that when the struggle ultimately took place, "[w]e were only from maybe like from me to the exit sign where the cocaine was. There was nobody in that immediate area." When asked by Taylor's counsel whether someone could have been in that area while the struggle took place, Osman responded, "Not at the time I observed it, no." He conceded he was not paying attention to the area during the entire struggle, but maintained "[he] was in direct sight of it."

At the conclusion of the evidence, the trial judge found that no evidence proved anyone else dropped the package, and convicted Taylor of possession of cocaine with intent to distribute, as well as simultaneous possession of a controlled substance and a firearm.

## II.

Taylor first argues "that [he] was seized when the driver of the car was prevented from leaving and that [this] seizure was unlawful." The Commonwealth contends, however, that Taylor "voluntarily consented to a search of his vehicle and of his person."

"[L]aw enforcement officers do not violate the Fourth Amendment by merely approaching an individual on the street or

-

in another public place . . . [and] asking him if he is willing to answer some questions."[1]  "Such encounters 'need not be predicated on any suspicion of the person's involvement in wrongdoing,' and remain consensual 'as long as the citizen voluntarily cooperates with the police.'"[2]  "Only when the officer, by means of physical force or show of authority, has in some way restrained the liberty of a citizen may we conclude that a 'seizure' has occurred."[3]

The trial judge accepted as credible the officer's testimony that they did not park in a manner that impeded the departure of the car.  Furthermore, when Officer Gilstrap went to the car, the driver exited the car and spoke to him.  While this was occurring, Taylor inquired of Officer Kendall the purpose of the investigation and then agreed to permit a search of the car.  On these facts, the trial judge had sufficient evidence of a consensual encounter and did not err in denying the motion to suppress.

### III.

Taylor next contends that the evidence was insufficient as a matter of law to establish that he possessed the drugs. Taylor argues that the Commonwealth failed to negate the

---

[1] Florida v. Royer, 460 U.S. 491, 497 (1983).

[2] Payne v. Commonwealth, 14 Va. App. 86, 88, 414 S.E.2d 869, 870 (1992) (citations omitted).

[3] Florida v. Bostick, 501 U.S. 429, 434 (1991).

-

reasonable hypothesis that another person abandoned the drugs in the street, while the police officers "were busy arresting [him]."

"To support [a conviction based upon constructive possession of drugs], the Commonwealth must point to evidence of acts, statements, or conduct of the accused or other facts or circumstances which tend to show that the [accused] was aware of both the presence and character of the substance and that it was subject to [the accused's] dominion and control."[4]  Furthermore, whenever "a conviction is based on circumstantial evidence, 'all necessary circumstances proved must be consistent with guilt and inconsistent with innocence and exclude every reasonable hypothesis of innocence.'"[5]

> However, "'[t]he Commonwealth is not required to prove that there is no possibility that someone else may have planted, discarded, abandoned, or placed the . . . drugs or paraphernalia where they were found near an accused.'"  Pemberton v. Commonwealth, 17 Va. App. 651, 655, 440 S.E.2d 420, 422 (1994) (citation omitted). Whether a hypothesis of innocence is reasonable is a question of fact, Cantrell v. Commonwealth, 7 Va. App. 269, 290, 373 S.E.2d 328, 339 (1988), and a finding by the

---

[4] Powers v. Commonwealth, 227 Va. 474, 476, 316 S.E.2d 739, 740 (1984).

[5] Garland v. Commonwealth, 225 Va. 182, 184, 300 S.E.2d 783, 784 (1983) (citation omitted).

-

> trial court is binding on appeal unless
> plainly wrong. <u>Martin v. Commonwealth</u>, 4
> Va. App. 438, 443, 358 S.E.2d 415, 418
> (1987)[6]

Here, unlike the circumstances in <u>Gordon v. Commonwealth</u>, 212 Va. 298, 183 S.E.2d 735 (1971), there was no "fatal gap in the circumstantial evidence," proving that Taylor possessed the drugs.[7] In <u>Gordon</u>, a police officer approached Gordon on a busy, public street and observed that he carried a small, manila envelope.[8] Gordon left the street and ran down several narrow passageways abutting the street.[9] As the officer chased Gordon through the passageways, the officer momentarily lost sight of Gordon on a few occasions.[10] When the officer eventually captured him, Gordon was no longer carrying the envelope.[11] After arresting Gordon, the officer searched the surrounding area for the envelope, but was unable to find it.[12] Subsequently, another officer arrived on the scene and found a small, manila envelope lying near one of the passageways on a grass plot separated from the public street by a perforated

---

[6] <u>Grier v. Commonwealth</u>, 35 Va. App. 560, 571, 546 S.E.2d 743, 748 (2001).

[7] <u>See</u> 212 Va. at 300-01, 183 S.E.2d at 737.

[8] <u>Id.</u> at 299, 183 S.E.2d at 736.

[9] <u>Id.</u>

[10] <u>Id.</u>

[11] <u>Id.</u>

[12] <u>Id.</u>

-

wall.[13]  However, neither officer observed Gordon make any sort of throwing or dropping motion during his flight.[14]

Accordingly, the Supreme Court reversed the conviction, concluding that because there was no witness produced who saw Gordon dispose of the manila envelope and because the envelope containing the narcotics "works" was found by a grass plot separated only by a perforated wall from the public street on which numerous persons were gathered, there was a fatal gap in the circumstantial evidence adduced against Gordon.[15] Considering the evidence in the light most favorable to the Commonwealth, as we must, the evidence in the case at bar demonstrates materially different circumstances.[16]  Although there was no evidence that the officers saw Taylor with the drugs, nor that they observed him discard the drugs, the drugs were found in his direct flight path, immediately after he was arrested. Further, the evidence proved that the drugs were not there when the officers arrived on the scene and that there were no other people in the area where the drugs were found either before, during, or just after the struggle took place.

---

[13] Id. at 300, 183 S.E.2d at 736.

[14] See id.

[15] Id. at 300-01, 183 S.E.2d at 737.

[16] See Goins v. Commonwealth, 218 Va. 285, 288-89, 237 S.E.2d 136, 139 (1977).

-

Thus, the circumstantial evidence in this case excluded every reasonable hypothesis of innocence and established an unbroken chain of circumstances from which the trier of fact could properly find, beyond a reasonable doubt, that Taylor dropped the drugs on Little Church Street, in the course of his flight from police. Furthermore, the trial court's factual finding to the effect, "[i]f you want to say somebody just decided they were going to unload 12 grams of cocaine right where [Taylor had] just run, you can argue that. I don't accept it as a meritorious argument," was not "plainly wrong" on these facts.

Finally, we note that, while no single piece of evidence presented at trial was sufficient to sustain the trial court's finding that Taylor possessed the cocaine found in the street, the totality of the evidence supports his conviction beyond a reasonable doubt.[17] Specifically, Taylor was in actual possession of a razor blade with an unidentified substance, plastic bags similar to the one inch by one inch clear purple translucent plastic bags containing crack cocaine found on the street, as well as $106 in small denominations.[18] Second, the police found the

---

[17] See Glasco v. Commonwealth, 26 Va. App. 763, 774, 497 S.E.2d 150, 155 (1998) (holding that appeals court reviewing the sufficiency of the evidence of a defendant's awareness of the presence and character of a controlled substance and his dominion over it must consider the totality of the circumstances).

[18] See Colbert v. Commonwealth, 219 Va. 1, 4, 244 S.E.2d 748, 749 (1978) (finding that where the accused is in possession of a large amount of money in proximity to controlled

drugs on Taylor's direct path.[19]  Third, the police found two

pagers on his person, and a "couple of cell phones" in the car.[20]

For the reasons stated in this opinion, we affirm Taylor's

convictions.

Affirmed.

<hr />

substances, the court may reasonably conclude that the controlled substances are part of a large batch from which he derived his profits); Glenn v. Commonwealth, 10 Va. App. 150, 155, 390 S.E.2d 505, 508 (1990) (noting that the unexplained possession of a large amount of cash in small denominations constitutes evidence of intent to distribute).

[19] See Lane v. Commonwealth, 223 Va. 713, 716, 292 S.E.2d 358, 360 (1982) (noting that proximity to a controlled substance is a factor to consider when determining whether an accused constructively possessed drugs).

[20] See Glasco, 26 Va. App. at 775, 497 S.E.2d at 156 (recognizing pagers and cell phones as tools of the drug trade, probative of intent to distribute controlled substances).

Benton, J., concurring, in part, and dissenting, in part.

I concur in Part II of the majority opinion holding that Avery E. Taylor, Jr. was not seized when he engaged in conversation with the officers. For the reasons that follow, I dissent from Part III, and I would reverse the convictions and dismiss the indictments.

"To support [a conviction based upon constructive possession of drugs], the Commonwealth must point to evidence of acts, statements, or conduct of the accused or other facts or circumstances which tend to show that the [accused] was aware of both the presence and character of the substance and that it was subject to [the accused's] dominion and control." Powers v. Commonwealth, 227 Va. 474, 476, 316 S.E.2d 739, 740 (1984). Furthermore, whenever "a conviction is based on circumstantial evidence, 'all necessary circumstances proved must be consistent with guilt and inconsistent with innocence and exclude every reasonable hypothesis of innocence.'" Garland v. Commonwealth, 225 Va. 182, 184, 300 S.E.2d 783, 784 (1983) (citation omitted). Applying these principles, the Supreme Court has ruled that "circumstances of suspicion, no matter how grave or strong, are not proof of guilt sufficient to support a verdict of guilty . . . [because the] actual commission of the crime by the accused must be shown by evidence beyond a reasonable doubt to sustain . . . [a] conviction." Clodfelter v. Commonwealth, 218 Va. 619, 623, 238 S.E.2d 820, 822 (1977).

-

The record contains no evidence that any of the officers saw Taylor in possession of the package of cocaine they found in the street. Although at least three police officers pursued Taylor as he ran from the parking lot, none of them saw him hold or drop the package. Officer Gilstrap testified he did not see Taylor throw anything while he was running. He also testified that he had noticed people on Little Church Street and people on the hotel property watching the entire incident and that "[a]lmost anytime the police show up, people come out to observe." He further testified that many people were milling about after the officers subdued Taylor and that, at one point, he had to tell the people to move away.

Officer Kendall also testified that he did not see Taylor throw anything. He testified that people started showing up after they subdued Taylor. When asked, however, whether people were standing around watching the struggle, Officer Kendall testified that he "wasn't paying attention to anything around us. It was all I could do to struggle with Mr. Taylor." He recalled, however, that after they raised Taylor from the "asphalt behind the business," people were coming from East Washington Street and that an officer "actually had to tell them to clear the scene. It was a scene." He "couldn't tell . . . how long [the people] had been there."

Officer Osman testified that he chased Taylor the entire way from the car to the place where he grabbed Taylor. He

-

testified that he was watching Taylor during the entire pursuit and noticed that "[t]he whole time [Taylor] was running, his hands were in front of him." He said Taylor was reaching in his pants like he was "digging or grabbing at something." Officer Osman did not see Taylor throw anything as he ran; however, he saw "a pistol stuffed in [Taylor's] pants exactly where his hands were." He also testified that he was not watching the spectators because he "was too busy worrying about the gun [Taylor] had in his belt."

The record clearly establishes that the officers' fierce struggle with Taylor occupied their attention. As Officer Osman described, the officers were "fighting someone four times [their] size." According to Officer Kendall, it was "one of the worst fights [he] had in [his employment] with the police department." During the several minutes of fighting and struggling with Taylor, none of the officers was watching the area of Little Church Street where the cocaine was later found. The officers eventually sprayed Taylor with a chemical to subdue him. By that time, however, many people had gathered to watch these events.

The lack of evidence proving that Taylor possessed the package of cocaine is a "fatal gap in the circumstantial evidence," Gordon v. Commonwealth, 212 Va. 298, 301, 183 S.E.2d 735, 737 (1971), and manifestly establishes that the evidence in this case was insufficient to prove beyond a reasonable doubt

-

that Taylor ever possessed the cocaine.  Indeed, the facts in this case are more favorable to Taylor's lack of possession than the facts in Gordon.  In Gordon, a police officer saw Gordon retrieve "a brownish color, manila color envelope" from between bushes and a concrete fence.  212 Va. at 299, 183 S.E.2d at 736.  After Gordon began to run, the officer chased him and saw that he was still carrying the envelope.  Id.  During the chase, the officer never saw Gordon discard the envelope.  Id.  While the officer was capturing and arresting Gordon, another officer found an envelope containing heroin on the route of the chase.  Id. at 299-300, 183 S.E.2d at 736.  The arresting officer testified that the envelope "was the 'same color, size and shape' as the envelope which he had seen Gordon pick up [and hold]."  Id. at 300, 183 S.E.2d at 736.  Although the arresting officer saw Gordon retrieve and run with an envelope that was identical to the envelope that contained the drugs, the Supreme Court held that the trier of fact impermissibly drew an inference that Gordon had possessed the envelope that was recovered and had dropped it during the pursuit.  Id.

In this case, no evidence proved that Taylor ever possessed the package containing cocaine or that he dropped it during the police pursuit.  The Commonwealth's evidence failed to negate the reasonable hypothesis that someone in the group of spectators who hastily gathered to watch the chase and fight dropped the package while the officers struggled with Taylor.

-

Likewise, the evidence failed to negate the reasonable hypothesis that someone dropped the package while passing or watching that location while the officers were questioning Taylor and the driver in the hotel parking lot. The evidence proved spectators gathered in several places to watch the questioning, the chase, and the fight. Indeed, on at least one occasion the spectators were in such close proximity that an officer had to tell them to move away. As in Gordon, the package was found along "the public street on which numerous persons were gathered." 212 Va. at 301, 183 S.E.2d at 737.

The evidence further proved that the clean empty "zips" that Taylor possessed could be purchased in various "businesses in the city that sell these." A police officer testified the "zips" were often used "for watch parts, jewelry parts for your necklace, jewelry parts for watches and things like that." He further testified that the color of the "zips" was not unusual and that a person could purchase an order of these items "by that color . . . clear, purple, any color you want. It's not unusual, no."

In short, the record in this case permits only the bald assumption that Taylor had the cocaine and dropped it. The theory of this possession is based on pure speculation and conjecture; it is not a fact proved beyond a reasonable doubt. It is well established that "[s]uspicious circumstances, including proximity to a controlled drug, are insufficient to

-

support a conviction." Behrens v. Commonwealth, 3 Va. App. 131, 135, 348 S.E.2d 430, 432 (1986). Likewise, the "mere opportunity to commit an offense raises only 'the suspicion that the defendant may have been the guilty agent; and suspicion is never enough to sustain a conviction.'" Christian v. Commonwealth, 221 Va. 1078, 1082, 277 S.E.2d 205, 208 (1981) (quoting Simmons v. Commonwealth, 208 Va. 778, 783, 160 S.E.2d 569, 573 (1968)). "To justify conviction of a crime, it is insufficient to create a suspicion or probability of guilt." Moore v. Commonwealth, 254 Va. 184, 186, 491 S.E.2d 739, 740 (1997). As was the case in Gordon, "the fatal gap in the circumstantial evidence" exists precisely because the Commonwealth failed to prove Taylor ever possessed the package they found on the public throughway, and fails to exclude the reasonable hypothesis that other individuals, who were present and moving close to watch the spectacle, dropped the contraband. Absent proof that Taylor possessed the package, the evidence establishes only that the package with the cocaine was found at a point along Taylor's escape route -- a fact insufficient to prove Taylor earlier had possessed and dropped it. Gordon, 212 Va. at 299, 183 S.E.2d at 736.

Because the evidence failed to prove beyond a reasonable doubt that Taylor ever possessed the package containing the

-

cocaine, I would reverse the convictions and dismiss the indictments.