UNPUBLISHED

COURT OF APPEALS OF VIRGINIA

Present: Judges Huff, Malveaux and Chaney
Argued at Lexington, Virginia


MICHELLE DAWN MORRIS, A/K/A
 MICHELLE DAWN LOYA, A/K/A
 MICHELLE DAWN CHAVEZ-LOYA

                                       MEMORANDUM OPINION[*] BY
v.      Record No. 0074-23-3                  JUDGE GLEN A. HUFF
                                       MARCH 26, 2024

COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF AUGUSTA COUNTY
Anne F. Reed, Judge

Jessica N. Sherman-Stoltz (Sherman-Stoltz Law Group, PLLC, on
briefs), for appellant.

Matthew J. Beyrau, Assistant Attorney General (Jason S. Miyares,
Attorney General, on brief), for appellee.


Michelle Morris ("appellant") was convicted of felony distribution of methamphetamine

and possession with the intent to distribute methamphetamine, second offense, after marked bills

used in a controlled buy and a large quantity of methamphetamine were discovered in a safe in

the car she was driving. The funds in the safe were also subject to asset forfeiture proceedings.

Appellant contends the evidence was insufficient to support her convictions, that the seized funds

should be returned, that the certificates of analysis should not have been admitted, and that she

was entitled to a suppression hearing after trial. Finding no error, this Court affirms her

convictions and the trial court's judgment.

---

[*] This opinion is not designated for publication. *See* Code § 17.1-413(A).

BACKGROUND[1]

On March 5, 2020, Investigator Chris Hilliard of the Augusta County Sheriff's Office worked with his confidential informant, Melissa Wilson, and Special Agent Glenn Phillips to arrange a controlled buy of methamphetamine from appellant at an apartment in the City of Waynesboro. In preparation for this controlled buy, Hilliard searched Wilson to ensure she had no drugs on her person and provided her with $4,560 in marked bills and a recording device. Hilliard used the recording device to listen to the controlled buy in real time and heard a voice, later identified as appellant's, state "I only have 41 grams left, and they want their money, but I don't have enough."

After the purchase was complete, Wilson provided Hilliard with suspected methamphetamine and Phillips observed appellant exit the apartment, get into an Audi, and drive off alone. Phillips followed appellant for some time—including waiting for her to enter and exit a subdivision,[2] during which time she was not observed—before initiating a traffic stop to arrest her for the sale to Wilson and for another sale which allegedly occurred two days earlier on March 3. Appellant did not initially stop after Phillips activated his emergency lights. She only stopped once Hilliard pulled in front of her and slowed down. Once appellant finally stopped, she sat alone in the vehicle with the doors locked and refused to exit. Investigator Rosemeier, another officer on scene, reached into appellant's partially rolled down window, unlocked the

---

[1] On appeal, this Court recites the facts "in the 'light most favorable' to the Commonwealth, the prevailing party in the trial court." *Hammer v. Commonwealth*, 74 Va. App. 225, 231 (2022) (quoting *Commonwealth v. Cady*, 300 Va. 325, 329 (2021)). In doing so, this Court "discard[s] the evidence of the accused in conflict with that of the Commonwealth, and regard[s] as true all the credible evidence favorable to the Commonwealth and all fair inferences to be drawn therefrom." *Cady*, 300 Va. at 329 (quoting *Commonwealth v. Perkins*, 295 Va. 323, 324 (2018)).

[2] Importantly, this subdivision only had a single entrance.

door, and removed her from the vehicle. She was placed in handcuffs and read her *Miranda*[3]

rights. Appellant invoked her right to counsel, was transported to jail, and held without bond.

Law enforcement's subsequent search of the vehicle revealed: a purse containing $290 in

U.S. currency and a plastic bag with residue, a pipe with residue on the driver's-side door, a

digital scale under the passenger seat, and a safe in the trunk.[4] Pursuant to a search warrant,

Hilliard searched the safe and discovered two plastic bags containing large quantities of

suspected methamphetamine as well as $13,350 in U.S. currency. Using a scale available at the

Sheriff's office, Hilliard determined that the combined weight of suspected methamphetamine

was 201.66 grams. Among the money recovered was the $4,560 in marked bills used as part of

the controlled buy by Wilson.

The next day, Hilliard intercepted appellant's phone call from the jail to an unknown

male. Appellant told the unknown male that "Melissa [Wilson] got me" and to "make sure you

tell everybody." Appellant also said something about "how to control [unintelligible] 57 grams."

The suspected methamphetamine recovered from the safe was sent to the state lab for testing.

Forensic testing revealed a total of 230.935 grams of a substance containing methamphetamine

with 91.2% purity.

On May 28, 2020—83 days after appellant's arrest and Hilliard's search of the safe—the

Commonwealth filed a "Notice of Seizure for Forfeiture" against appellant and "$12,080 in U.S.

Currency." This seizure notice stated:

> **TAKE NOTICE** that on or about March 6, 2020, the
> above-referenced property [i.e. the U.S. Currency named as a
> defendant] was seized by law enforcement authorities of the
> County of Augusta, Virginia, because the seized property was
> involved in a violation of [Virginia law], in that said property was
> used in substantial connection with, or represent the proceeds

---

[3] *Miranda v. Arizona*, 384 U.S. 436 (1966).

[4] The car was registered to an unknown third party—not to appellant.

from, the manufacture, sale, or distribution of controlled substances in violation of [Virginia law], or that said property was furnished, or intended to be furnished, in exchange for a controlled substance or that said property is traceable to such exchange.

On September 28, 2020, appellant was indicted on one count of felony distribution of 28 grams to 227 grams of methamphetamine and one count of felony possession of methamphetamine with the intent to distribute after having previously been convicted of a similar offense.[5] In January 2021, appellant moved to suppress all evidence obtained from the search of the vehicle she was driving at the time of her arrest. The following month, a new attorney was appointed for her after a conflict was discovered with her previously appointed counsel. This matter was then twice continued until the May 6, 2022 trial date. At trial, evidence obtained from the search of the vehicle, including the safe, was admitted without objection. Hilliard qualified as an expert in the distribution of narcotics and testified that the quantities of methamphetamine recovered were inconsistent with personal use; rather, they were consistent with the distribution of narcotics. Appellant was convicted of both charges.

At a bench trial on May 6, 2022, the Commonwealth introduced the certificates of analysis concerning the substance recovered from the safe. Appellant objected on relevancy grounds arguing that, due to the approximately 30 grams difference between the field weight and lab weight of the substance,

the weights in those certificates [of analysis] have absolutely no correlation to the weights of the substance that were taken from the safe of the car that [appellant] was driving. . . .

I don't really care how good those certificates of analysis are on a scientific basis. The problem is they have no correlation based upon the weights as to the amounts that were taken from

---

[5] Appellant was also charged with two counts of distribution of methamphetamine stemming from events on May 3, 2020. She was acquitted of these charges on a motion to strike at trial.

- 4 -

[appellant] or the safe in the car that [appellant] was driving. That's my objection.[6]

The trial court considered appellant's objection, noting that "if there's a waiver, or a stipulation that there's no issue with the chain of custody, the certificates themselves would then be admissible. . . . [Y]our argument is . . . about the weight of the evidence rather than its admissibility at this stage."[7] Notwithstanding appellant's clarification that her objection was not a "weight of the evidence" argument, the certificates of analysis were moved into evidence. Both Hilliard and the laboratory technician from the state lab testified as to the chain of custody concerning the substances tested. At the conclusion of trial, the court returned to the certificates of analysis and announced:

> In this instance, the witnesses who seized the evidence and processed that evidence have testified that it did not appear to be tampered with in any way. And absent some other indication that there was an issue with that evidence, the [trial] [c]ourt accepts that the chain of custody involved in the evidence in these charges was established and the certificate of analysis is indeed correct giving the weights that were established through the [certificates of analysis].

The trial court found appellant guilty and scheduled sentencing for a later date.

On October 4, 2022—five months after her conviction—appellant sought a hearing on her January 2021 suppression motion. On October 6, 2022, she moved for the return of $1,270 of the seized funds arguing that "[n]o notice of seizure was filed for" the difference between the amount recovered from the safe and the amount named in the information. Prior to sentencing, the trial court considered appellant's forfeiture return and suppression motions. The trial court

---

[6] Appellant also specified that she had "no objection to the chain of custody regarding [the certificates of analysis] [,] . . . no objection to whatever purity analysis was done there[, and] . . . no objection to whatever the weights are."

[7] For the sake of clarity, the phrase "weight of the evidence" used by the trial court here references the amount of reliance the finder of fact should place on a particular piece of evidence in reaching a decision, not the physical weight of the substance at issue here.

denied the forfeiture motion to return any seized funds, finding that the buy money belonged to Virginia State Police and remained its property during the controlled buy. The trial court also declined to hear the suppression motion because appellant had already been tried and convicted of these offenses.

This appeal followed.

ANALYSIS

I. The evidence presented at trial was sufficient to support appellant's convictions.

Appellant first contends that the evidence presented at trial was insufficient to convict her of these two felony offenses. "When reviewing the sufficiency of the evidence, '[t]he judgment of the trial court is presumed correct and will not be disturbed unless it is plainly wrong or without evidence to support it.'" *McGowan v. Commonwealth*, 72 Va. App. 513, 521 (2020) (alteration in original) (quoting *Smith v. Commonwealth*, 296 Va. 450, 460 (2018)). "In such cases, '[t]he Court does not ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt.'" *Id.* (alteration in original) (quoting *Secret v. Commonwealth*, 296 Va. 204, 228 (2018)). "Rather, the relevant question is whether '*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *Vasquez v. Commonwealth*, 291 Va. 232, 248 (2016) (quoting *Williams v. Commonwealth*, 278 Va. 190, 193 (2009)). "If there is evidentiary support for the conviction, 'the reviewing court is not permitted to substitute its own judgment, even if its opinion might differ from the conclusions reached by the finder of fact at the trial.'" *McGowan*, 72 Va. App. at 521 (quoting *Chavez v. Commonwealth*, 69 Va. App. 149, 161 (2018)).

"Circumstantial evidence, if sufficiently convincing, is as competent and entitled to the same weight as direct testimony." *Maust v. Commonwealth*, 77 Va. App. 687, 699 (2023) (en banc) (quoting *McCain v. Commonwealth*, 261 Va. 483, 493 (2001)). "But 'when the evidence

- 6 -

is wholly circumstantial . . . all necessary circumstances proved must be consistent with guilt and inconsistent with innocence and exclude every reasonable hypothesis of innocence.'" *Id.* (alteration in original) (quoting *Haas v. Commonwealth*, 299 Va. 465, 468 (2021)). "This requires an unbroken evidentiary chain of necessary circumstances, which satisfies 'the guarded judgment that both the corpus delicti and the criminal agency of the accused have been proved to the exclusion of any other rational hypothesis.'" *Commonwealth v. Moseley*, 293 Va. 455, 463 (2017) (quoting *Wright v. Commonwealth*, 292 Va. 386, 397 (2016)). "[T]he reasonable-hypothesis principle is not a discrete rule unto itself . . . [and] the principle 'does not add to the burden of proof placed upon the Commonwealth in a criminal case.'" *Vasquez*, 291 Va. at 249-50 (quoting *Commonwealth v. Hudson*, 265 Va. 505, 513 (2003)). "The Commonwealth . . . is not required to exclude every possibility that others may have committed the crime for which a defendant is charged but is only required to exclude hypotheses of innocence that flow from the evidence." *Maust*, 77 Va. App. at 700 (alteration in original) (quoting *Dowden v. Commonwealth*, 260 Va. 459, 468 (2000)).

Code § 18.2-248.03(A) criminalizes "possess[ion] with intent to manufacture, sell, give, or distribute 28 grams or more of a mixture or substance containing a detectable amount of methamphetamine, its salts, isomers, or salts of its isomers." Code § 18.2-248(A) provides that "it shall be unlawful for any person to manufacture, sell, give, distribute, or possess with intent to manufacture, sell, give or distribute a controlled substance or an imitation controlled substance." This section adds enhanced penalties for subsequent offenses. *See* Code § 18.2-248(C) (providing that upon a second conviction under this code section the defendant may "be sentenced to imprisonment for life or for any period not less than five years, three years of which shall be a mandatory minimum term of imprisonment to be served consecutively with any other sentence, and he shall be fined not more than $500,000").

Appellant argues the evidence is insufficient to support her convictions because the methamphetamine was recovered from a safe in the trunk of a car that was not registered to her, there was no indication that she knew the safe was in the trunk, and she had no control or possession of the safe at the time it was seized. This Court disagrees. The evidence at trial indicated that appellant met with Wilson and was heard discussing weights and money. Following this interaction with appellant, Wilson returned without the buy money and with suspected methamphetamine. Appellant was seen driving away from the scene of the controlled buy alone. While she was not continuously observed the entire time between the controlled buy and her arrest, the only time she was not observed was the time she spent in a subdivision with only one entrance and exit. Finally, following the traffic stop, large sums of money, including the marked bills from the controlled buy earlier that evening and the suspected methamphetamine, were recovered from a safe in the car appellant was driving. Forensic testing confirmed the recovered substances as methamphetamine, and Hilliard's expert testimony indicated that the amount of methamphetamine recovered was indicative of drug distribution. From that evidence, this Court cannot say that the trial court's judgment was plainly wrong or without evidentiary support.

Further, this Court is not persuaded by appellant's claim that the Supreme Court's decision in *Gordon v. Commonwealth*, 212 Va. 298 (1971), supports her argument as to the insufficiency of the evidence. In *Gordon*, the Supreme Court reversed a possession of heroin conviction because there was a "three or four seconds" break in the chain of evidence. *Id.* at 299. There, the defendant was seen carrying a manila envelope when an officer lost sight of him for three or four seconds. *Id.* After the officer regained sight of the defendant his hands were empty; an envelope was later recovered from along the path the defendant had traveled. *Id.* at 299-300. The Supreme Court reasoned that the envelope that was introduced and suspected to

belong to the defendant was discovered "on a grass plot separated only by a perforated wall from the public street on which numerous persons were gathered" and therefore it could not be fairly traceable to the defendant. *Id.* at 301.

While there was a considerably longer period here during which appellant was not observed, the evidence in the safe is fairly traceable to her, along with the methamphetamine Wilson purchased using the controlled buy money. Hilliard provided Wilson with marked bills, heard a voice he recognized as appellant's during a drug transaction, and later recovered those same marked bills from a safe in the trunk of a car driven by appellant. Regardless of how long she was not observed, the physical evidence supports the conclusion that appellant placed the bills in the safe and therefore exercised control over the safe and all of its contents; particularly because it was found in the car she was later stopped in after driving away from the site of the controlled buy. Thus, this Court rejects appellant's argument that this matter is similar to *Gordon* and affirms her convictions.

<u>II. The trial court did not err in admitting the certificates of analysis into evidence.</u>

Appellant next argues the trial court erred in overruling her objections to the Commonwealth's certificates of analysis and admitting them into evidence. Appellant frames her argument to the certificates of analysis on relevancy grounds, arguing that the Commonwealth was required to establish "with 'reasonable assurance' that the evidence analyzed and presented at trial was in the same condition as it was when obtained by the police." On appeal, she contends the Commonwealth has not met this burden because of the differences in the weight of the methamphetamine between what the forensic lab recorded and what Hilliard testified was seized during the search. In appellant's view, the inconsistent weights undermine the reliability that the exhibits tested by the lab were the same substances recovered from the car and safe and, therefore, they should have been excluded.

This Court "review[s] a trial court's decision to admit or exclude evidence using an abuse of discretion standard and, on appeal, will not disturb a trial court's decision to admit or deny evidence absent a finding of abuse of discretion." *Warren v. Commonwealth*, 76 Va. App. 788, 802 (2023) (quoting *Avent v. Commonwealth*, 279 Va. 175, 197 (2010)). "Applying this standard, 'we do not substitute our judgment for that of the trial court. Rather, we consider only whether the record fairly supports the trial court's action.'" *Id.* (quoting *Satterwhite v. Commonwealth*, 56 Va. App. 557, 563 (2010)). "The abuse-of-discretion standard includes review to determine that the discretion was not guided by erroneous legal conclusions." *Id.* (quoting *Coffman v. Commonwealth*, 67 Va. App. 163, 166-67 (2017)). "Generally, '[a]ll relevant evidence is admissible.'" *Jones v. Commonwealth*, 71 Va. App. 70, 88 (2019) (alteration in original) (quoting Va. R. Evid. 2:402(a)). "'Relevant evidence' means evidence having any tendency to make the existence of any fact in issue more probable or less probable than it would be without the evidence." *Warren*, 76 Va. App. at 802 (quoting Va. R. Evid. 2:401).

At trial, appellant argued that the differences in weight between the substance recovered and the substance tested led to the conclusion that they were not correlated, and therefore the certificates of analysis were irrelevant and should have been excluded. Barring an objection to the chain of custody, the trial court found that the discrepancies in the weight measurements went to the weight of the evidence as a whole, not the admissibly of the certificates of analysis. Because appellant explicitly waived any objection to chain of custody, and because the trial court explicitly considered the chain of custody in determining how much weight to afford the certificates of analysis, this Court cannot say the trial court abused its discretion in admitting the

- 10 -

certificates of analysis into evidence.[8] Accordingly, the trial court's judgment to admit the

certificates of analysis is affirmed.

III. Appellant failed to preserve her arguments concerning the motion to suppress.

Appellant's third assignment of error challenges the trial court's decision not to hear her

motion to suppress following trial. Code § 19.2-266.2 governs pre-trial defense motions to

suppress. Importantly,

> Such a motion or objection in a proceeding in circuit court shall be
> raised in writing, *before trial*. The motions or objections shall be
> filed and notice given to opposing counsel not later than seven
> days before trial in circuit court . . . . A hearing on all such
> motions or objections shall be held not later than three days *prior
> to trial in circuit court* . . . as set by the trial judge. The circuit
> court may, however, for good cause shown and in the interest of
> justice, permit the motions or objections to be raised at a later time.

Code § 19.2-266.2(B) (emphases added). "The public policy advanced by Code § 19.2-266.2 is

directly related to the provisions of Code § 19.2-398." *Upchurch v. Commonwealth*, 31

Va. App. 48, 52 (1999). Code § 19.2-398 allows the Commonwealth to undertake a pre-trial

appeal when a circuit court suppresses evidence. *See* Code § 19.2-398(A)(2).

Appellant failed to preserve this issue for this Court's review. "Applying Rule 5A:18, we

have held 'this Court "will not consider an argument on appeal [that] was not presented to the

trial court."'" *Arrington v. Commonwealth*, 53 Va. App. 635, 641 (2009) (alteration in original)

(quoting *Farnsworth v. Commonwealth*, 43 Va. App. 490, 500 (2004)). In *Arrington*, a criminal

defendant failed to comply with the terms of Code § 19.2-266.2 and failed to object to the

admissibility of the evidence when it was introduced at trial. *Id.* at 639-42. Consequently, this

Court held that the defendant "was required to challenge the admissibility of the evidence in the

---

[8] Appellant relies on *Robertson v. Commonwealth*, 12 Va. App. 854 (1991), and *Jeter v. Commonwealth*, 44 Va. App. 733 (2005), in support of her relevancy argument. Both *Robertson* and *Jeter* were challenges to chain of custody—an argument appellant explicitly waived. Accordingly, these cases are unpersuasive.

trial court to preserve his argument on appeal that the evidence was unlawfully seized." *Id.* at 641.

That holding applies with equal force to the instant matter. No hearing—pre- or post-trial—was held on appellant's motion to suppress the evidence seized from the search of the vehicle she was driving at the time of her arrest. That evidence was admitted at trial without any objection; indeed, appellant expressly acknowledged there were no chain of custody issues. The trial court denied appellant's request for a post-trial hearing on her pre-trial motion to suppress. Because appellant did not object to the evidence's introduction at trial, she has waived any argument concerning her motion to suppress.

IV.  The trial court did not err in denying appellant's motion to return seized funds.

Appellant contends that the trial court erred in denying her motion to return $1,270 of the seized funds because the Commonwealth failed to timely file the required information. "[A]n issue of statutory interpretation is a pure question of law which we review de novo." *Scott v. Commonwealth*, 58 Va. App. 35, 48 (2011) (alteration in original) (quoting *Evans v. Evans*, 280 Va. 76, 82 (2010)). "[T]h[is] Court is 'bound by the trial court's factual findings unless those findings are plainly wrong or unsupported by the evidence.'" *Hairston v. Commonwealth*, 67 Va. App. 552, 561 (2017) (quoting *Malbrough v. Commonwealth*, 275 Va. 163, 168 (2008)).

Code § 19.2-386.22 provides for the seizure of

> (i) all money . . . used in substantial connection with (a) the illegal manufacture, sale or distribution of controlled substances or possession with intent to sell or distribute controlled substances in violation of § 18.2-248, . . . (ii) everything of value furnished, or intended to be furnished, in exchange for a controlled substance in violation of § 18.2-248 . . . and (iii) all moneys or other property, real or personal, traceable to such an exchange, together with any interest or profits derived from the investment of such money or other property.

Code § 19.2-386.22(A). "All seizures and forfeitures under [Code § 19.2-386.22(A)] shall be governed by the procedures contained in Chapter 22.1 (§ 19.2-386.1 et seq.)." Code § 19.2-386.22(B). "An action against any property subject to seizure . . . shall be commenced by the filing of an information in the clerk's office of the circuit court." Code § 19.2-386.1(B). The information

> shall (a) name as parties defendant all owners and lienholders then known or of record and the trustees named in any deed of trust securing such lienholder, (b) *specifically describe the property*, (c) set forth in general terms the grounds for forfeiture of the named property, (d) pray that the same be condemned and sold or otherwise be disposed of according to law, and (e) ask that all persons concerned or interested be notified to appear and show cause why such property should not be forfeited.

*Id.* (emphasis added). "When property has been seized . . . prior to filing an information, then an information against that property shall be filed within 90 days of the date of seizure or the property shall be released to the owner or lien holder." Code § 19.2-386.3(A). Code § 19.2-386.1(B) requires the Commonwealth's information to "specifically describe the property" subject to the forfeiture.

Here, the Commonwealth's information described the property as the "above-referenced property" that was seized "on or about March 6, 2020, . . . by law enforcement authorities of the County of Augusta, Virginia." The "above-referenced property" is "$12,080 in U.S. Currency." This Court finds such notice describes the property subject to the forfeiture proceeding with sufficient specificity. Appellant was informed not only that the Commonwealth sought the forfeiture of U.S. currency, but also of how to identify which currency would be subject to forfeiture. She likewise had notice that the Commonwealth was not seeking forfeiture of the vehicle she was driving or the safe in which the currency was discovered. Accordingly, any discrepancy between the amount of U.S. currency named as defendant and the amount reported

- 13 -

on the search warrant inventory is of no consequence.[9]  Therefore, because the information filed

83 days after the seizure was timely and specifically described the property subject to forfeiture,

this Court affirms the trial court's denial of appellant's motion to return any of the seized funds.

CONCLUSION

For the foregoing reasons, this Court affirms the trial court's judgment.

*Affirmed*

---

[9] Finding that the Commonwealth's information was specific enough to satisfy Code § 19.2-386.1(B), this Court does not consider whether the buy money provided as part of the controlled buy remained the property of the Commonwealth after it entered appellant's possession.

- 14 -